**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

JEFFREY P. BENNETT,

Plaintiff,

vs.

UNITED STATES OF AMERICA,

Defendant.

Case No.: 2:20-cv-01584-GMN-NJK

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND DECISION**

On August 9, and 11, 2023, the Court presided over a bench trial in this case. (Mins. Proceedings, ECF Nos. 66, 67). The trial involved only the liability portion of one claim under the Federal Tort Claims Act. (Order Granting Stip. Bifurcate Trial, ECF No. 21). That single claim alleged that: (1) the Government, through its agency the Federal Aviation Administration ("FAA"), owed a duty to of care to the public to ensure its employees, including FAA driver James Aliitaeao ("Aliitaeao"), exercised due care while operating a semi-truck; (2) Aliitaeao failed to use requisite care in striking Plaintiff Jeffrey Bennett's ("Plaintiff") vehicle; and that (3) Plaintiff suffered injuries both to his person and property from the collision.[1] (Compl. ¶ 21–31, ECF No. 1). At the bench trial, the Court heard evidence and legal argument. Now, in accordance with Federal Rule of Civil Procedure ("Fed. R. Civ. P. 52(a)"), and after reviewing the entire trial record, the Court makes the following findings of fact and conclusions of law regarding Plaintiff's claim.

///

///

[1] The only other claim alleged in Plaintiff's Complaint has been dismissed. (Order Granting Stip. Dismiss Plaintiff's Second Cause Action, ECF No. 16).

**FINDINGS OF FACT**

1. On December 20, 2018, Plaintiff[2] and his wife Nan Eisley-Bennett ("Eisley-Bennett") began traveling to Ventura, California in their 2014 Winnebago Forza Recreation Vehicle ("RV") to visit family. (Day One Trial Tr. 16:16–24, 20:3–10, ECF No. 75); (Day Two Trial Tr. 71:14–24, ECF No. 74). Plaintiff was driving the RV, while Eisley-Bennett was in the front passenger seat. (Day One Trial Tr. 53:25– 54:1); (Day Two Trial Tr. 94:12–19).

2. Plaintiff and Eisley-Bennett completed a maintenance checklist on their RV before departing. (Day One Trial Tr. 20:3–21:22); (Day Two Trial Tr. 70:5–17). The weather on this morning was clear and sunny. (Day One Trial Tr. 19:10–12:22); (James Aliitaeao Dep. 35:8–24, Pl.'s Ex 15 to Am. Exhibit List).

3. Plaintiff was towing a Honda CR-V behind the RV. (Day One Trial Tr. 17:17– 18:1); (Day Two Trial Tr. 66:12–17). Plaintiff had driven this RV for seven years and had experience towing vehicles behind the RV. (*Id.*).

---

[2] On June 6, 2011, Plaintiff pleaded guilty to making a False Statement in violation of 18 U.S.C. 1001 in the United States District Court for the Central District of California. (J. in 2:10-cr-01339-JFW, Ex. 5015 to Def. Ex. List). A conviction under 18 U.S.C. 1001 requires the government to prove that the defendant "1) made a statement, 2) that was false, and 3) material 4), with specific intent, 5) in a matter within the agency's jurisdiction." *United States v. Selby*, 557 F.3d 968, 977 (9th Cir. 2009) (per curiam). The parties do not dispute Rule 609(b) governs and requires, as a predicate to admissibility, that "the probative value, supported by specific facts and circumstances," of evidence of a criminal conviction more than ten years old must "substantially outweigh" the prejudicial effect of the evidence." Rule 609(b). Here, Plaintiff's conviction is directly relevant to his credibility, a crucial issue in this case as he, Einsley-Bennett, and Aliitaeao were the only witnesses to the accident. Further, the prejudicial impact of this conviction is limited because the Court conducted a bench trial. *See E.E.O.C. v. Farmer Bros. Co.*, 31 F.3d 891, 898 (9th Cir. 1994) (risk that a verdict will be affected unfairly and substantially by the admission of evidence is far less in a bench trial) (citing *Gulf States Utilities Co. v. Ecodyne Corp.*, 635 F.2d 517, 519 (5th Cir. 1981)) (excluding relevant evidence on the basis of unfair prejudice "has no logical application to bench trials" and is "a useless procedure"). Finally, the Court notes Plaintiff lied about have a felony conviction during his deposition. (Jeffrey Bennett Dep. 31:22–33:25, Ex. 1 to Gov. Am. Exhibit List). Accordingly, the Court considers Plaintiff's prior felony conviction and his misrepresentation during his deposition in weighing his testimony.

4. Plaintiff is blind in his left eye and has 20/15 vision in his right eye. (Day One Trial Tr. 94:3–95:4). Plaintiff has a microscopic cataract in his right eye which he testified does not affect his vision. (*Id.* 94:3–5, 114:12–25); (*see also* Jeffrey Bennett Dep. 37:1–14, Ex. 5001 to Gov. Am. Ex. List). Considering Plaintiff's testimony and the medical records provided by the parties, the Court finds Plaintiff's vision in his right eye was not impaired on the date in question.

5. Plaintiff entered the Interstate-15 South freeway. (Day One Trial Tr. 22:23–23:9); (Day Two Trial Tr. 71:14–16). Aliitaeao, an experienced FAA trucker driver, (Day One Trial Tr. 145:6–146:1), was also traveling on the Interstate-15 South freeway to Goodsprings, Nevada to pick up and transport heavy equipment for the FAA. (Day One Trial Tr. 149:17–150:2, 152:1–15); (James Aliitaeao Dep. 22:12–18, Pl.'s Ex 15 to Am. Exhibit List).

6. On the date of the accident, Aliitaeao was employed as a heavy equipment operator with the FAA. (Day One Trial Tr. 145:24–146:1). This position entailed driving "semi-trucks pulling trailers" and operating heavy equipment "like dozers, graders, backhoes, [and] cranes." (*Id.* 146:1–3).

7. Aliitaeao was driving a semi-truck with a flatbed trailer attached in the course and scope of his employment. (Day One Trial Tr. 177:24–178:4); (James Aliitaeao Dep. 23:1–7, Pl.'s Ex 15 to Am. Exhibit List). The flatbed trailer was empty. (Day One Trial Tr. 177:24–178:4); (Day Two Trial Tr. 74:15–19).

8. At this time, there was construction taking place on the Interstate-15 South freeway. (Day One Trial Tr. 164:1–5); (Day Two Trial Tr. 72:6–10). A construction zone was established, in which the speed limit had been reduced to fifty-five (55) miles-an-hour. (Day One Trial Tr. 150:14–18, 203:23–204:1); (Day Two Trial Tr. 74:24–75:1).

9. Plaintiff and Aliitaeao were traveling at or below fifty-five (55) miles-an-hour in the construction zone. (Day One trial Tr. 143:22–144:4); (Day Two Trial Tr. 75:2–4).

10. There were three lanes in the construction zone. (Day One Trial Tr. 27:22–28:8). Plaintiff was in the far-left lane, while Aliitaeao was in the middle lane, or the lane directly to the right of Plaintiff.[3] (*Id.* 22:11–19, 27:22–28:8, 147:11–15); (Jeffrey Bennett Dep. 82:19–22, Ex. 1 to Gov. Am. Exhibit List); (Lt. Eckert Dep. 45:23–46:6, Pl.'s Ex 16 to Am. Exhibit List).

11. In their respective lanes, Plaintiff's vehicle was ahead of Aliitaeao's entering the construction zone. (Day One Trial Tr. 22:10–21). Aliitaeao, from his vantage point behind Plaintiff's vehicle, testified Plaintiff swerved into the middle lane several times in the construction zone. (*Id.* 121:4–24, 149:17–24). In contrast, Eisley-Bennett testified that Plaintiff was not swerving in the construction zone. (Day Two Trial Tr. 79:25–80:2). According to Aliitaeao, at one point Plaintiff nearly hit his mirror. (Day One Trial Tr. 134:16–24, 135:9–136:1, 164:20–165:19).

12. Aliitaeao explained he frequently checked his mirrors while driving and was aware of Plaintiff's RV because Plaintiff almost struck his mirror. (Day One Trial Tr. 134:3–24). However, Aliitaeao did not recall Plaintiff was towing a car behind his RV. (*Id.* 122:8–123:10).

13. There was a slight rightward curve at one point in the construction zone. (Day One Trial Tr. 28:18–29:8). Aliitaeao went to pass Plaintiff at this curve.[4] (*Id.* 124:3–125:5). As Plaintiff and Aliitaeao were exiting this curve, the right side of Plaintiff's

---

[3] Eisley-Bennett recalled she and Plaintiff were in the middle lane while Aliitaeao was in the far-right lane. (Day Two Trial Tr. 107:11–108:1). Here, the Court credits the testimony of Plaintiff and Aliitaeao and finds Plaintiff was driving in the far-left lane and Aliitaeao in the middle lane.

[4] "Passed" in this context does not mean that Aliitaeao was executing a lane change from the middle lane into the far-left lane for purposes of moving in front of Plaintiff. (*Id.* 166:14–170:2). Instead, it means that while the parties were in their respective lanes, Aliitaeao progressed farther down the road relative to Plaintiff. (*Id.*); (*see also* Day Two Trial Tr. 83:6–25).

RV collided with Aliitaeao's vehicle. (*Id.* 22:11–23:4, 28:18–29:8). In reaching this conclusion, the Court credits the testimony of Plaintiff and Eisley-Bennett that they, along with the RV, veered to the left exiting this curve, (*id.* 32:5–11, 33:20–25, 73:15–18, 79:9–14, 86:11–15); (Day Two Trial Tr. 78:8–13), and the testimony of Nevada Highway Patrol ("NHP") Lieutenant Shawn Eckert ("Lieutenant Eckert")[5] that he believed a collision occurred. (Day Two Trial Transcript 39:18–21); (*see also* Lt. Eckert Dep. 68:16–21, Pl.'s Ex 16 to Am. Exhibit List). The Court's conclusion that a collision occurred, however, does not mean that Plaintiff has met his burden in showing that Aliitaeao caused the collision.

14. Neither Plaintiff nor Eisley-Bennett saw the collision. (Day One Trial Tr. 80:19–81:1); (Day Two Trial Tr. 98:18–22, 106:11–23); (Nan Eisley-Bennett Dep. 28:14–24, 33:7–24, Pl.'s Ex 17 to Am. Exhibit List). Neither of them observed Aliitaeao's vehicle leave its lane or veer into their lane prior to the collision.[6] (Day One Trial Tr. 80:19–81:1); (Day Two Trial Tr. 75: 21–76:1, 98:18–22, 101:10–12, 106:7–23, 116:13–14, 122:7–13); (*see also* Nan Eisley-Bennett Dep. 28:14–24, Pl.'s Ex 17 to Am. Exhibit List).

15. Nevertheless, both maintain Aliitaeao entered Plaintiff's lane striking the right-side of his RV. (Day One Trial Tr. 42:1–12, 68:19–69:4); (Nan Eisley-Bennett Dep. 105:15–24, Pl.'s Ex 17 to Am. Exhibit List). Plaintiff and Eisley-Bennett testified Plaintiff

---

[5] Lieutenant Eckert was a sergeant with NHP at the time of the accident and was later promoted to lieutenant. (Day One Trial Tr. 173:18–174:2). The Order refers to him as Lieutenant Eckert throughout for clarity.

[6] Plaintiff's counsel advanced the proposition that a pin on Aliitaeao's trailer damaged Plaintiff's RV. (Day Two Trial Tr. 184:6–25). The Court does not necessarily disagree with this argument, but it does note an implicit contradiction that arises if it is assumed as true. Specifically, Plaintiff and Eisley-Bennett testified they first saw Aliitaeo's vehicle after the accident. Practically, Aliitaeao's trailer was attached behind his truck, thus, if the trailer collided with the RV, the front portion of Aliitaeao's vehicle already passed Plaintiff's RV. Presumably, Plaintiff and Eisley-Bennett would then have seen Aliitaeao's vehicle prior to the accident thereby implicitly contradicting their testimony.

did not enter Aliietaeo's lane when the collision occurred. (Day One Trial Tr. 24:5–22, 42:6–8); (Day Two Trial Tr. 79:20–80:4); (*see also* Nan Eisley-Bennett Dep. 105:15–24, Pl.'s Ex 17 to Am. Exhibit List).

16. Both attributed the collision to Aliitaeao because he was the only driver next to them when the collision occurred. (Day One Trial Tr. 25:3–10); (Day Two Trial Tr. 76:2–19, 93:12–19).

17. Aliitaeao was not aware a collision occurred. (Day One Trial Tr. 131:12–14, 213:5–9); (James Aliitaeao Dep. 27:6–25, Pl.'s Ex 15 to Am. Exhibit List). Aliitaeao's trial and deposition testimony acknowledged it was possible for his trailer to enter another lane without him knowing if he made a wide turn. (Day One Trial Tr. 131:14–133:24); (James Aliitaeao Dep. 36:23–37:1, Pl.'s Ex 15 to Am. Exhibit List). Aliitaeao expressed this does not occur here, however, because he did not make a wide turn. (Day One Trial Tr. 131:14–133:24). Instead, Aliitaeao testified he maintained his lane throughout.[7] (*Id.*).

18. Aliitaeao continued driving following the incident. (Day One Trial Tr. 125:22–126:4). Aliitaeao accelerated to seventy (70) miles-an-hour after he left the construction zone and moved to the far-right lane.[8] (*Id.* 150:11–21, 170:9–17); (Day Two Trial Tr. 131:5–15).

---

[7] At one point, Aliitaeao testified that "[Plaintiff] didn't come over into my lane when I passed him." (Day One Trial Tr. 125:3–5). The Court considers this statement along with his written statement that Plaintiff had crossed over into his lane, (Day Two Trial Tr. 24:11–17), when assessing his credibility. The Court separately observes that despite any variations in whether Plaintiff maintained his lane, Aliitaeao consistently represented that *he* never left his lane.

[8] Aliitaeao testified his vehicle has a governor which prevents him from exceeding seventy (70) miles-an-hour. (*Id.* 151:6–16). No evidence was otherwise provided by the parties either confirming or disproving Aliitaeao's testimony. In the absence of any evidence to the contrary, the Court credits Aliitaeao's testimony that his vehicle had a governor which prevented him from going over seventy miles-an-hour.

19. Plaintiff slowed down after the collision. (Day One Trial Tr. 170:16–24). Upon seeing Aliitaeao drive away, however, Plaintiff began accelerating to prevent Alliiteao from fleeing what Plaintiff believed was a hit-and-run. (Day Two Trial Tr. 77:2–3). Eisley-Bennett dialed 911 as Plaintiff began speeding to catch Aliitaeao. (*Id.* 76:19–77:3).

20. Eisley-Bennett told law enforcement that their RV was struck by a flatbed truck rather than a trailer. (*Id.* 123:13–125:1). At trial, the Government placed significance on this mistaken terminology. (*Id.*). The Court finds Eisley-Bennett's terminology, even if technically incorrect, raises a distinction without a difference. The Court attributes any mistake in Eisley-Bennett's statement to a genuine misunderstanding concerning the proper terminology in referring to Aliitaeao's vehicle. It is undisputed Eisley-Bennett saw Aliitaeao's vehicle following the collision. (*Id.* 138:8–13). While she may not have seen what part of Aliitaeao's vehicle collided with the RV or knew what to call his vehicle, the Court credits Eisley-Bennett's ability to accurately identify Aliitaeao's vehicle and trailer.

21. Police dispatch broadcasted that a hit-and-run had occurred based on Eisley-Bennett's call. (Day One Trial Tr. 175:25–176:9). Lieutenant Eckert subsequently pulled Aliitaeao over at his predetermined exit on his way to Goodsprings. (*Id.*). Lieutenant Eckert testified Aliietaeo was not speeding at this time, nor did it appear he was trying to evade police. (*Id.* 199:9–21). Plaintiff later pulled over to this same location. (*Id.* 181:12–24); (Day Two Trial Tr. 89:8–18).

22. Lieutenant Eckert first spoke with Plaintiff and Eisley-Bennett. (Day One Trial 178:8–2). They explained their version of what transpired, and the damage caused to their RV. (*Id.* 178:10–21). Plaintiff was extremely agitated during this discussion.

23. Lieutenant Eckert proceeded to question Aliitaeao about what occurred. Lieutenant Eckert told Aliitaeao that his vehicle had "clipped" Plaintiff's RV. (Day One Trial Tr. 188:14–17). However, Lieutenant Eckert clarified in his deposition and at trial that this statement was based solely on Plaintiff and Eisley-Bennet's version of events and did not evince his belief that Aliitaeao caused the collision. (*Id.* 188:15–189:9, 205:21–206:4); (*see also* Lt. Eckert Dep. 16:6–17:9, 19:12–16, Pl.'s Ex 16 to Am. Exhibit List).

24. Aliitaeao provided three different variations of what transpired to Lieutenant Eckert. (Day Two Trial Tr. 24:11–17, 25:19–25, 27:16–21). First, Aliitaeao told him that Plaintiff's RV was close to his mirror but that no contact was made and Plaintiff remained in his lane. (*Id.*). Next, Aliitaeao said Plaintiff was driving on the white line. (*Id.*). Finally, Aliitaeao, in a written statement, wrote Plaintiff crossed the white line into his lane. (*Id.*). Although Aliitaeao gave different accounts of Plaintiff's actions, he consistently told Lieutenant Eckert he never left his lane. (*Id.* 25:29–26:3).

25. Lieutenant Eckert then returned to Plaintiff and Eisley-Bennett, where he informed them of Aliitaeao's version of what occurred. (Day One Trial Tr. 191:6–7, 191:10–17, 208:15–209:1). Plaintiff became extremely upset upon hearing Aliitaeao's statement, and expressed he wanted to conduct a citizen's arrest of Aliitaeao for his purported negligence. (*Id.*); (*see also* Lt. Eckert Dep. 64:17–65:11, Pl.'s Ex 16 to Am. Exhibit List).

26. Lieutenant Eckert told Plainitff and Eisley-Bennett that Aliitaeao would be listed at fault for the accident. (Day One Trial Tr. 191:6–7). Again, the Court does not credit this testimony as evidencing Aliitaeao's negligence. Lieutenant Eckert explained he

made this representation merely to calm Plaintiff.[9] (*Id.* 191:9–17, 210:2–8); (*see also* Lt. Eckert Dep. 21:12–22:1, Pl.'s Ex 16 to Am. Exhibit List) (explaining that he made the statement "to calm [Plaintiff] down" and that he did not make that statement for any other reason).

27. Lieutenant Eckert had the parties exchange insurance information. Lieutenant Eckert, in providing Plaintiff and Eisley-Bennett with Aliitaeao's insurance information, remarked that a worse entity could not have hit them. (Day Two Trial Tr. 13:3–12). The Court does not find Lieutenant Eckert's remark is indicative of Aliitaeao's liability. First, Lieutenant Eckert testified that the insurance exchange in no way shows he believed Aliitaeo was at fault. (*Id.* 13:6–9). Second, Lieutenant Eckert explained his statement was not directed at Aliitaeo's alleged negligence, but instead solely concerned an insurance issue. (*Id.* 13:22–6); (*see also* Lt. Shawn Eckert Dep. 29:6–30:7, Pl.'s Ex 16 to Am. Exhibit List).

28. Lieutenant Eckert, upon looking at Plaintiff's RV and trailer attached to Aliitaeao's vehicle, observed a circular pin in the trailer that appeared to be the same shape and size of damage sustained to Plaintiff's RV. (Day One Trial Tr. 179:15–180:10); (Day Two Trial Tr. 49:18–51:9); (Lt. Eckert Dep. 60:1–25, 62:1–24, Pl.'s Ex 16 to Am. Exhibit List); (*see also* Photo of Damage to RV at 1, Pl.'s Ex. 5 to Am. Exhibit List) (circular damage to RV). However, Lieutenant Eckert testified he was unable to conclude if the pin could have plausibly connected with Plaintiff's RV. (Day Two Trial Tr. 48:14–17).

29. As stated, Lieutenant Eckert testified Aliitaeao provided him with three different variations of what transpired. (*Id.* 24:11–17, 25:19–25, 27:16–21). In contrast,

---

[9] For this same reason, the Court does not credit Lieutenant Eckert's statement because he explains he was repeating Plaintiff's version of events solely based on his desire to keep Plaintiff calm. (*Id.* 211:1– 25); (*see also* Lt. Eckert Dep. 23:16–23:5, Pl.'s Ex 16 to Am. Exhibit List).

Lieutenant Eckert found Plaintiff and Eisley-Bennett's version of what occurred remained consistent. (Day One Trial Tr. 187:15–24); (Day Two Trial Tr. 28:16–22). Lieutenant Eckert did not believe either party was providing him with false information. (Day One Trial Tr. 193:20–23). He found the fulcrum of the dispute concerned the conflicting statements provided by the parties. (*Id.* 194:6–9).

30. Ultimately, Lieutenant Eckert was unable to determine who was at fault because of this conflicting information.[10] (*Id.* 191:18–24, 210:9–14); (Lt. Eckert Dep. 25:24–26:1, 37:15–25, Pl.'s Ex 16 to Am. Exhibit List). Lieutenant Eckert expressed he did not know whether Aliiteaeao left his lane. (Lt. Eckert Dep. 56:16–21, Pl.'s Ex 16 to Am. Exhibit List). In his deposition, Lieutenant Eckert acknowledged "it's a possibility of anything" for who was at fault for the accident. (*Id.* 65:16–23, Pl.'s Ex 16 to Am. Exhibit List); (*see also* Day Two Trial Tr. 39:18–21).

31. Following his investigation, Lieutenant Eckert determined what occurred was not a hit-and-run. (Lieutenant Eckert Dep. 56:16–21, Pl.'s Ex 16 to Am. Exhibit List)

32. Plaintiff subsequently submitted an insurance claim for damage to his RV and person in excess of $900,000. (Day One Trial Tr. 49:10–51:4). Plaintiff included additional categories of property damage in his insurance claim than what he testified to at trial. (*Id.* 51:5–53:23).

## CONCLUSIONS OF LAW

"When analyzing actions brought under the FTCA, courts apply the substantive law of the state in which the events giving rise to the complaint occurred." *Shanner v. United States*, 998 F.3d 822, 824 (8th Cir. 2021); *see also Louie v. United States*, 776 F.2d 819, 824 (9th Cir.

[10] In his police report, Lieutenant Eckert listed Aliitaeao as V1 and Plaintiff as V2. (Day Two Trial Tr. 48:23–25). Lieutenant Eckert explained that if a person is found at fault, he or she must be listed as V1. (*Id.* 48:1–7). Because Lieutenant Eckert found Aliitaeao was not at fault, the Court finds the fact Aliitaeao was listed at V1 does not evidence he was negligent.

1985). The alleged tort occurred in Nevada; so, Nevada law applies. The parties agree on that. Plaintiff's claim sounds in negligence. (*See generally* Compl.).

To prevail on a negligence claim in Nevada, a plaintiff must establish four elements: (1) the existence of a duty of care; (2) breach of that duty; (3) legal causation; and (4) damages. *Lawrence v. Las Vegas Metro. Police Dep't*, 451 F. Supp. 3d 1154, 1172 (D. Nev. 2020) (citation omitted). The second element, breach, requires deciding "[w]hether a defendant's conduct was 'reasonable' under a given set of facts." *Lee v. GNLV Corp.*, 22 P.3d 29, 212 (Nev. 2001).

Plaintiff's burden to prove that Aliitaeao caused the collision is by the preponderance of the evidence standard. "Under the preponderance of the evidence standard, the relevant facts must be shown to be more likely true than not." *United States v. Montano*, 250 F.3d 709, 713 (9th Cir. 2001); *see also* Ninth Circuit Manual of Model Jury Instructions, Sec. 1.6 (2017 Ed.) ("When a party has the burden of proving any claim [or affirmative defense] by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim [or affirmative defense] is more probably true than not true.").

Here, Plaintiff failed to meet his burden of proof to show that the United States, through Aliitaeao, breached any duty of care. For the reasons set forth above, the Court finds Plaintiff has shown it is more probable than not a collision occurred. *See supra* ¶ 12. But Plaintiff has not met his burden in showing Aliitaeao's conduct was the likely cause of the collision. Plaintiff and Einsley-Bennett testified they neither saw the collision occur nor observed Aliitaeao's vehicle leave its lane. (Day One Trial Tr. 80:19–81:1); (Day Two Trial Tr. 75: 21–76:1, 98:18–22, 101:10–12, 106:11–23, 116:13–14, 122:7–13). While they both assert Plaintiff maintained his lane, Aliitaeao testified to the same. (Day One Trial Tr. 131:12–16, 132:10–133:20, 133:23–25). Although Aliitaeao initially gave differing versions of what occurred to Lieutenant Eckert, he consistently asserted he never left his lane. (Day One Trial Tr. 25:29–

26:3). Lieutenant Eckert did not believe Aliitaeao provided false information, and the Court reaches the same opinion. (*Id.* 193:20–23).

Plaintiff's counsel averred Aliitaeao's breach is also evidenced by the fact Plaintiff's RV veered to the left following the collision. (Day Two Trial Tr. 192:21–194:8). Even considering the damage to Plaintiff's RV documented in photographs, the Court is unable to conclude that the fact Plaintiff's RV veered to the left evinces Aliitaeao caused the collision. It remains equally true that Plaintiff could have veered to the left as a corrective action following his failure to maintain his lane. The remaining evidence and testimony admitted at trial fails to otherwise show Aliitaeao veered into Plaintiff's lane.

At bottom, the Court's determination is based on three main conclusions. First, Plaintiff has not cast sufficient doubt on Aliitaeao's credibility and his version of what occurred. Second, Plaintiff did not elicit sufficient testimony at trial supporting his and Eisley-Bennett's version of what occurred. Third, and related to the second, Plaintiff did not introduce evidence or exhibits sufficient to show Aliitaeao failed to maintain his lane. Accordingly, considering the record in this case, the Court finds Plaintiff has failed to meet his burden of proof to show the United States breached any duty of care.

///

///

///

///

///

///

///

///

///

**ORDER**

Now, therefore, based upon the foregoing Findings of Fact and Conclusions of Law,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that Plaintiff has failed to establish by a preponderance of the evidence that the United States breached any duty of care.

**IT IS FURTHER ORDERED, ADJUDGED, and DECREED** that the issue of damages will not proceed to trial.

**IT IS SO ORDERED.**

**DATED** this 26 day of September, 2023.

Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COUR